# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Clinton D. Vilardo,
     Petitioner,

    vs.                       Case No. 1:06cv841
                                   (Beckwith, C.J.; Black, M.J.)

Warden, Lebanon Correctional
Institution,
     Respondent.

---

## REPORT AND RECOMMENDATION

---

       Petitioner, who is incarcerated at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on respondent's motion to dismiss filed April 28, 2008 (Doc. 11), which is opposed by petitioner (Doc. 14).[1]

### Procedural Background

       On January 27, 2003, the Hamilton County, Ohio, grand jury issued a ten-count indictment charging petitioner with two counts of aggravated vehicular homicide in violation of Ohio Rev. Code § 2903.06(A); three counts of aggravated vehicular assault in violation of Ohio Rev. Code § 2903.08(A)(1); three counts of vehicular assault in violation of Ohio Rev. Code § 2903.08(A)(2); failure to stop and remain at the scene of the accident in violation of Ohio Rev. Code § 4549.02; and tampering with evidence in violation of Ohio Rev. Code  § 2921.12(A)(1).

---

[1]  Petitioner was granted an extension of time to July 22, 2008 in which to file a response to the motion to dismiss.  (*See* Docs. 12, 13).  Petitioner filed his memorandum in opposition to the motion on July 9, 2008.  (*See* Doc. 14).

(Doc. 11, Ex. 1).  The charges stemmed from a motor vehicle accident that occurred on January 10, 2003, when petitioner, who allegedly was driving a pickup truck under the influence of alcohol at an excessive rate of speed, struck the rear of a car stopped at an intersection; the collision resulted in the death of the driver of the car, as well as in "serious physical harm" to three passengers in that car.  (*See id.*; *see also id.,* Ex. 4, Tr. 11-15).

At a hearing held on March 27, 2003, petitioner entered guilty pleas to one of the aggravated vehicular homicide charges and the three aggravated vehicular assault charges in exchange for the dismissal of the remaining charges.  (*See id.,* Exs. 2, 4).  In the filed written plea Entry, which was signed by petitioner and counsel for both parties, petitioner stated that he understood his "right to appeal a maximum sentence, my other limited appellate rights and that any appeal must be filed within 30 days of my sentence." (*Id.,* Ex. 2).  Petitioner also stated that he understood and acknowledged that he had "agreed with the prosecution on a potential sentence, to wit: nine (9) years total." (*Id.*).  Petitioner was sentenced that same date in accordance with the plea agreement to a prison term totaling nine (9) years.  (*Id.,* Ex. 3; Ex. 4, Tr. 30-31).

Petitioner did not pursue an appeal as of right from his conviction and sentence.

In June 2005, over two years after he was sentenced, petitioner filed a *pro se* "Post-Sentence Criminal Rule 32.1 Motion To Correct Sentence" with the trial court; petitioner claimed that under the Supreme Court's decisions in *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005), the trial court violated the Sixth Amendment when it imposed a nine-year "non-minimum, consecutive term of imprisonment" for a "first time felony offender." (*See id.,* Ex. 5).  Petitioner also filed a *pro se* petition for post-conviction relief with the trial court, raising essentially the same claim that he had been "sentenced in violation of his Constitutional rights, as enumerated most recently in *Blakely* and *Booker.*" (*Id.* Ex. 10, p. 8).

The trial court overruled petitioner's post-conviction petition on June 20, 2005, and denied petitioner's motion to correct sentence on July 5, 2005.  (*Id.,* Exs. 6, 11).

On July 22, 2005, petitioner filed a notice of appeal from the June 20, 2005

2

entry overruling his petition for post-conviction relief. (*Id.,* Ex. 12). On August 25, 2005, the Ohio Court of Appeals, First Appellate District, *sua sponte* dismissed the appeal "for failure of the appellant to comply with the Ohio Rules of Appellate Procedure to wit: the notice of appeal was not timely filed." (*Id.,* Ex. 13). Respondent states that petitioner did not appeal this decision to the Supreme Court of Ohio. (*Id.,* Brief, p. 3).

On December 9, 2005, petitioner filed a notice of appeal and motion for leave to file a delayed appeal from the July 5, 2005 entry overruling his motion to correct sentence. (*Id.,* Exs. 7-8). The Ohio Court of Appeals, First Appellate District, overruled petitioner's motion for leave to file a delayed appeal on January 26, 2006. (*Id.,* Ex. 9). Apparently, petitioner did not pursue a further appeal to the state supreme court in this matter either.

In the meantime, on October 17, 2005, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Ohio Court of Appeals, First Appellate District, from the trial court's March 27, 2003 judgment of conviction and sentence. (*Id.,* Exs. 14-15). Petitioner asserted in the notice of appeal that his sentence was "contrary to law" and *Blakely* and that his trial counsel was ineffective. (*See id.*, Ex. 14). Petitioner claimed as "cause" for his failure to file a timely appeal that his trial counsel informed him that he "did not have a right to appeal, after I requested that he appeal." (*Id.,* Ex. 15). Petitioner also averred in an attached affidavit that after counsel told him he could not appeal his sentence, petitioner still requested that an appeal be filed "and was told [counsel] would file a notice of appeal." (*Id.*, "Affidavit," ¶2).

On November 10, 2005, the Ohio Court of Appeals overruled petitioner's motion for delayed appeal, finding that petitioner had "failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.,* Ex. 16).

Petitioner timely appealed to the Supreme Court of Ohio. In his memorandum in support of jurisdiction, petitioner asserted as propositions of law that (1) he was denied due process and equal protection when the Ohio Court of Appeals failed to appoint counsel to represent him on delayed appeal; (2) he was denied "access to appellate remedies, due process and equal protection" when the Ohio Court of Appeals refused his request to order trial transcripts pertaining to his claim that the trial court failed to properly advise him of his appeal rights; (3) the sentence was imposed in violation of the Sixth Amendment under *Blakely* and

*Booker*; and (4) trial counsel was ineffective in failing "to defend against structural defects at sentencing." (*Id.,* Ex. 18).

On March 8, 2006, the state supreme court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 20). Thereafter, petitioner filed a petition for writ of certiorari with the United States Supreme Court, which was denied on October 2, 2006. (*Id.,* Exs. 21-22).

The instant petition for writ of habeas corpus was filed on December 11, 2006. (Doc. 1).[2]

In the petition, petitioner asserts three grounds for relief:

**Ground One:** Petitioner was denied due process and equal protection by being denied access to available appellate remedies.

**Supporting Facts:** The trial court never advised Appellant of his appeal rights. The Court of appeals refused to permit a delayed appeal upon Appellant's discovery of his appeal rights and proper application therefor. . . .

**Ground Two:** Petitioner was denied due process, equal protection and right to jury by judicial fact finding of non-alleged elements used to enhance sentence beyond statutory maximum.

**Supporting Facts:** The maximum statutory prison term for Petitioner

---

[2] Under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See, e.g., Jones v. Bertrand,* 171 F.3d 499, 502 (7th Cir. 1999); *Nichols v. Bowersox,* 172 F.3d 1068, 1077 (8th Cir. 1999); *Spotville v. Cain,* 149 F.3d 374, 376-77 (5th Cir. 1998); *Burns v. Morton,* 134 F.3d 109, 112-13 (3rd Cir. 1998); *see also In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997). The form petition used by petitioner in this case includes a section to be filled out by the *pro se* prisoner setting forth, for filing purposes, the dates the petition was executed and placed in the prison mailing system. Although petitioner signed the petition, he failed to fill out the rest of that section of the petition. In the absence of any information in the record reflecting when the petition was signed or placed in the prison mailing system, the undersigned assumes the petition was delivered to prison authorities for mailing and thus "filed" in December 2006.

4

based upon facts alleged in the charging instrument and admitted in the guilty plea is one term of two (2) years concurrently with two terms of one (1) year each for a total Term of two (2) Years.  The trial court engaged in judicial fact finding of facts not alleged in charging instrument or admitted by Petitioner to impose an increase of over fourfold the statutory maximum.  Further, the delineation of the "maximum" term in the pleas agreement was legally incorrect.

**Ground Three:**  Petitioner was deprived of constitutionally effective counsel throughout the state court proceedings.

**Supporting Facts:**  Trial counsel advocated entering a plea agreement which misstated the maximum sentence, failed to object to judicial factfinding based sentencing enhancement . . ., and failed to timely file a notice of appeal, resulting in an over fourfold increase in the maximum penalty and denial of right to appeal.

(*Id.*, pp. 6, 7, 9).

In response, respondent has filed a motion to dismiss.  Respondent contends that the petition is barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.  (Doc. 11).   Petitioner opposes respondent's motion.  (Doc. 14).

## OPINION

### The Petition Should Be Dismissed As Time-Barred

Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of:  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the

exercise of due diligence.  Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this case, the Court must first determine which, if any, limitations provision contained in 28 U.S.C. § 2244(d)(1) applies to petitioner's claims for relief.

Respondent argues that all of petitioner's claims accrued before petitioner's conviction became "final" by the conclusion of direct review or expiration of time for seeking such review.  Therefore, it is respondent's position that the statute of limitations set forth in § 2244(d)(1)(A) applies, which began to run on April 29, 2003 or one day after the 30-day period expired for filing an appeal as of right to the Ohio Court of Appeals from the trial court's March 27, 2003 final judgment entry.  (Doc. 11, Brief, p. 5).  Under this theory, the instant petition is time-barred because the one-year limitations period would have expired on April 29, 2004, and petitioner's subsequent motions filed over a year later in the state courts to correct sentence, for post-conviction relief, and for delayed appeal would not have served to toll the running of the statute, which had long since run its course, under 28 U.S.C. § 2244(d)(2).[3]

Petitioner has presented a number of arguments opposing respondent's position.

First, petitioner contends that no statute of limitations provision should apply because he has presented a jurisdictional issue which can be raised at any time.  (Doc. 14, pp. 1-4).  Even assuming, as petitioner argues, that jurisdictional claims are always subject to review on the merits despite a statute of limitations or other procedural bar, the undersigned is not persuaded that such a claim has been raised here.

Petitioner posits that the indictment was sufficiently deficient to deprive the

---

[3]  *See Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998); *see also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000);  *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998); *cf. Cox v. Angelone*, 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

court of subject matter jurisdiction, because it failed to allege the "additional elements . . . used at the sentencing hearing to increase Petitioner's sentence from the [presumptive] statutory maximum to the nine year term imposed." (*See id.,* p. 4).  However, no court (including the Supreme Court in *Blakely* and *Booker*) has held that the indictment must include not only the essential elements of the substantive criminal offenses charged against a defendant, but also any additional factual findings necessary for the imposition of a non-presumptive sentence falling within the permissible statutory range, which ultimately may or may not be made post-conviction at the sentencing hearing after a pre-sentence investigation.

In *State v. Foster,* 845 N.E.2d 470, 487-88 (Ohio 2006), the Supreme Court of Ohio held that certain sections of Ohio's sentencing code had been "eviserated by *Blakely*."  To remedy the constitutional infirmity, however, the *Foster* court adopted the approach taken in *Booker* of severing the four *Blakely*-offending portions of the sentencing statute and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences.  *See id.* at 494-98.  By excising the provisions that rendered Ohio's sentencing scheme mandatory and thus permitting the sentencing court broad discretion to impose a sentence within the applicable statutory range, the *Foster* court adopted a remedy that, as in *Booker*, 542 U.S. at 233, "encounters no Sixth Amendment shoal" and thus certainly no jurisdictional hurdle.

In any event, no jurisdictional concerns are triggered here because, contrary to petitioner's contention, the trial court did not make any additional findings in determining petitioner's sentence.  Instead, the court merely imposed the sentence that the parties had jointly recommended as a term of their plea bargain.  Indeed, it appears from the record that the trial court imposed the precise terms of imprisonment that the parties had agreed to in "arriv[ing] at" the aggregate nine-year sentence–*i.e.*, consecutive prison terms of five (5) years for the aggravated vehicular homicide offense, one (1) year each for two of the aggravated vehicular assault offenses, and two (2) years for the remaining aggravated vehicular assault offense.  (*See* Doc. 11, Ex. 3; Ex. 4, Tr. 5-6).

Second, petitioner suggests that to the extent his claims are governed by a limitations provision, the provision set forth in 28 U.S.C. §2244(d)(1)(B) applies to his claims.  (*See* Doc. 14, p. 9).  Specifically, petitioner states that he was prevented from filing a timely federal habeas petition due to the ineffective assistance of his trial counsel, which amounted to a state impediment to filing.

Petitioner, therefore, apparently contends that the statute of limitations began to run at an unspecified later time, when the impediment caused by counsel's ineffectiveness was removed.  (*See id.*).

The limitations provision set forth in § 2244(d)(1)(B) has been found to apply in cases where the petitioner has alleged that his counsel was ineffective in perfecting or pursuing an appeal requested by him and such ineffectiveness actually prevented petitioner from filing a timely habeas petition.  *See, e.g., Waldron v. Jackson,* 348 F.Supp.2d 877, 882-86 (N.D. Ohio 2004); *Woods v. Jackson,* No. 1:00cv803, 2006 WL 746293, at *5-7 (S.D. Ohio Mar. 22, 2006) (Spiegel, S.J.) (unpublished).[4]

Petitioner has alleged that his trial counsel was ineffective to the extent counsel advised petitioner that he could not appeal his sentence and failed to file a timely notice of appeal requested by petitioner.  However, the undersigned gives little weight to these conclusory self-serving allegations, which lack credibility when viewed in the context of the present record.

Petitioner did not take any action to challenge the March 27, 2003 judgment of conviction and sentence until June 2005, over two years after the appeal period had expired.  Although the trial court did not expressly advise petitioner of his appeal rights at the combined plea and sentencing hearing held March 27, 2003, in the written plea agreement signed by petitioner, petitioner stated that he understood his "right to appeal a maximum sentence, my other limited appellate rights *and that any appeal must be filed within 30 days of my sentence*;" petitioner also stated that he had "read this form and . . . knowingly, voluntarily, and intelligently enter this guilty plea."  (Doc. 11, Ex. 2) (emphasis added).   Furthermore, before the court

---

[4]  *See also Winkfield v. Bagley,* 66 Fed.Appx. 578, 582-83 (6th Cir. May 28, 2003) (not published in Federal Reporter), *cert. denied,* 540 U.S. 969 (2003); *Dean v. Pitcher,* No. Civ. 02-71203-DT, 2002 WL 31875460, at *3 (E.D. Mich. Nov. 7, 2002) (unpublished); *Collier v. Dretke,* No. 3:03-CV-2744-L, 2004 WL 1585903, at *2 (N.D. Tex. July 13, 2004) (Report & Recommendation) (unpublished), *adopted,* 2004 WL 1944030 (N.D. Tex. Aug. 31, 2004) (unpublished); *Felton v. Cockrell,* No. 3:03-CV-0764-L, 2003 WL 21946862, at *3 (N.D. Tex. Aug. 13, 2003) (Report & Recommendation) (unpublished); *Cf. Granger v. Hurt,* 90 Fed.Appx. 97 (6th Cir. Jan. 23, 2004) (not published in Federal Reporter) (petition was timely filed under § 2244(d)(1)(D), because the petitioner did not act outside the scope of due diligence by waiting two months before inquiring about the status of his appeal which he believed had been filed by his attorney);*but see Dunker v. Bissonnette,* 154 F.Supp.2d 95, 105 (D. Mass. 2001) (rejecting argument that the petitioner's court-appointed attorney was a "state actor" under § 2244(d)(1)(B)).

accepted his plea, petitioner confirmed on the record that he had discussed the plea form with his attorney and understood "what it says." (*Id.,* Ex. 4, Tr. 8).

It, therefore, appears clear from the record that petitioner was placed on notice and understood at the time he entered his plea that he had at least a limited right to an appeal, which he was required to file promptly within a thirty-day time frame. Petitioner's unsupported, self-serving, conclusory allegation that his trial counsel agreed to his request to file a notice of appeal but failed to do so, is belied by the lack of any follow-up or other correspondence between petitioner and his counsel in the over two-year period that followed.

Indeed, when petitioner finally took action in June 2005 to challenge his sentence in the state courts, he did not file a motion for delayed appeal or otherwise claim relief based on trial counsel's purported failure to file the notice of appeal. Instead, petitioner filed motions to correct sentence and for post-conviction relief based solely on *Blakely* and *Booker*, and failed to even suggest error on the part of trial counsel as grounds for excusing the delay in filings or as an independent claim for review. Only after those motions were denied did petitioner file a motion for delayed appeal in October 2005, claiming for the first time that his trial counsel's ineffectiveness constituted cause for the two and one-half year lapse in time between the trial court's March 27, 2003 final judgment entry and the filing of the delayed appeal motion.

Accordingly, the undersigned is not persuaded that petitioner was prevented from filing a federal habeas petition within a year after his conviction became final based on the unsupported and conclusory allegation that his trial counsel failed to file a timely notice of appeal per his request. Even if petitioner had assumed that his counsel would file a notice of appeal within the requisite thirty-day period, petitioner has not provided any explanation for his two and one-half year silence with respect to this issue, or his over two-year delay in bringing any claim to the state courts' attention challenging the trial court's March 27, 2003 final judgment entry.

No connection has been established between trial counsel's alleged failure to file a notice of appeal and petitioner's ability to file a timely federal habeas petition. *Cf. Hawk v. Warden, Noble Corr. Instit.,* No. 2:06cv707, 2007 WL 2840319, at *1, 4 (S.D. Ohio Sept. 27, 2007) (Watson, J.; Abel, M.J.) (unpublished) (rejecting the petitioner's argument that he was actually prevented from timely filing his federal habeas petition, where the petitioner was similarly

informed in the written plea agreement that he had a limited right of appeal, which he was required to file within thirty days of sentencing, and petitioner claimed that he told his attorney to file an appeal, but his attorney advised him it wasn't worth it and that he had no grounds for an appeal).[5]  Therefore, § 2244(d)(1)(B) is inapplicable to the case-at-hand.

In addition, the undersigned finds no merit to petitioner's claim that § 2244(d)(1)(B) is applicable because trial counsel improperly advised petitioner that he could not appeal his agreed-to sentence.

Ohio Rev. Code § 2953.08(D) provides that a "sentence imposed upon a defendant is not subject to review . . . if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."[6]  Therefore, as counsel purportedly advised, petitioner had no right granted by the state to appeal his sentence, which was jointly recommended by the defense and prosecution, unless it was not "authorized by law."  *See Rockwell v. Hudson,* No. 5:06cv391, 2007 WL 892985, at *6 (N.D. Ohio Mar. 21, 2007) (unpublished) (citing *State v. Mathis,* 846 N.E.2d 1, 6 (Ohio 2006); *State v. Porterfield,* 829 N.E.2d 690, 691 (Ohio 2005) (syllabus)) ("Under Ohio law, a sentence imposed by the trial court which is authorized by law and recommended jointly by the defense and prosecution is not subject to appellate review."); *Cornell v. Jeffries,* No. 2:05cv948, 2006 WL 2583300, at *8 (S.D. Ohio Sept. 7, 2006) (Smith, J.) (unpublished) (and numerous Ohio cases cited therein).

---

[5]  *Contrast Waldron,* 348 F.Supp.2d at 880, 884 (where petitioner stated his desire to appeal at sentencing; appellate counsel filed a notice of appeal that was dismissed as untimely and did not inform petitioner of the appeal's dismissal; petitioner asked a friend to contact the court of appeals about his appeal; and soon after learning that the appeal had been dismissed, petitioner sought assistance from the state public defender); *Woods, supra,* 2006 WL 746293, at *1 (where petitioner unsuccessfully tried on numerous occasions to contact counsel about the status of his requested appeal and called the public defender's office for assistance immediately after he discovered that his counsel had not filed an appeal on his behalf).

[6]  Although in  *Foster,* the Supreme Court of Ohio struck down several provisions of Ohio's sentencing statutes as unconstitutional in light of *Blakely,* § 2953.08(D) was not among the provisions severed.  *Foster* did not "change the statutory range of punishments.  Thus, any sentence imposed upon an offender that falls within the statutory range of available sentences still remains a sentence 'authorized by law' under Ohio Rev. Code § 2903.08(D)."  *State v. Billups*, No. 06AP-853, 2007 WL 853335, at *2 (Ohio Ct. App. 10 Dist. Mar. 22, 2007) (unpublished), *appeal dismissed,* 872 N.E.2d 952 (Ohio 2007).

Here, petitioner's sentence was authorized by law to the extent it did not exceed the maximum terms that the trial court was permitted by statute to impose on petitioner's convictions for aggravated vehicular homicide (which carried a maximum prison term of eight years) and for three aggravated vehicular assault offenses (each of which carried a maximum prison term of five years).  (*See* Doc. 11, Ex. 2); *cf. Cornell, supra,* 2006 WL 2583300, at *13 (and state case cited therein).

Furthermore, petitioner is unable to establish that his sentence was not "authorized by law" within the meaning of Ohio Rev. Code § 2953.08(D) in light of *Blakely* and the line of cases following *Blakely*.  Petitioner's conviction and sentence became final when the time expired in April 2003 for filing an appeal as of right, over a year before the Supreme Court decided *Blakely* on June 24, 2004, followed by *Booker* on January 12, 2005.

It is well-settled in the Sixth Circuit that neither *Blakely* nor *Booker* may be applied retroactively to cases on collateral review, where as here the conviction previously had become final by the conclusion of direct review or the expiration of time for seeking such review.[7]  *See, e.g., United States v. Saikaly,* 424 F.3d 514, 517 & n.1 (6th Cir. 2005) (and supporting cases from other circuits cited therein); *Humphress v. United States,* 398 F.3d 855, 860-63 (6th Cir.), *cert. denied,* 546 U.S. 885 (2005); *Spiridigliozzi v. United States,* 117 Fed.Appx. 385, 394 (6th Cir. Nov. 15, 2004) (not published in Federal Reporter).[8]

Even assuming, *arguendo,* that *Blakely* and *Booker* could be retroactively applied here, Ohio's appellate courts are in accord that the line of Supreme Court cases leading up to and resulting from *Blakely* are inapplicable to a stipulated sentence authorized by state law and imposed in accordance with the parties' plea

_____

[7]  The Supreme Court has stated that "[s]tate convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely petition has been finally denied.'" *See Allen v. Moore,* Case No. 1:05cv731, 2007 WL 651248, at *4 n.1. (S.D. Ohio Feb. 23, 2007) (Barrett, J.) (unpublished) (quoting *Beard v. Banks,* 542 U.S. 406, 411 (2004) (in turn quoting *Caspari v. Bohlen,* 510 U.S. 383, 390 (1994)).

[8]  *Cf. Hanna v. Jeffreys,* No. 2:05cv727, 2006 WL 462357, at *6 (S.D. Ohio Feb. 22, 2006) (King, M.J.) (Report & Recommendation) (unpublished) (holding that "§ 2244(d)(1)(C) does not serve to delay the date the statute of limitations began to run as to petitioner's claim that his sentence violates *Blakely* ... because *Blakely* is not retroactively applicable to cases on collateral review"), *adopted,* 2006 WL 689060 (S.D. Ohio Mar. 26, 2006) (Graham, J.) (unpublished).

agreement, which relieves the onus of fact-finding from the trial court. *See, e.g., State v. Brown,* No. 05AP-375, 2006 WL 225524, at *3 (Ohio Ct. App. 10 Dist. Jan. 31, 2006) (unpublished) (holding that because a *Blakely* claim "is premised upon the need for a jury to make certain statutorily required sentencing findings," and because no such findings are required under Ohio law when the parties agree to and jointly recommend the sentence imposed, *Blakely* could not be applied to the defendant's sentence), *appeal dismissed,* 848 N.E.2d 859 (Ohio 2006); *State v. Ranta,* No. 84976, 2005 WL 1705744, at *3 (Ohio Ct. App. 8 Dist. July 21, 2005) (unpublished) ("*Blakely* addresses only those instances in which a judge makes findings statutorily required for the imposition of certain sentences. Because we conclude in the case at bar that as a result of the plea agreement no findings were required, *Blakely* does not apply for this very specific reason.").[9]

Indeed, in an analogous case, this Court has recognized that "by agreeing as a term of the plea bargain to a specified prison sentence . . . petitioner waived any argument that such sentence was imposed under statutory standards held to be unconstitutional by the Supreme Court [of Ohio] in . . . *Foster* . . . in light of *Blakely*. . . ." *Todd v. Wolfe,* No. 1:05cv737, 2007 WL 951616, at *5 (S.D. Ohio Mar. 28, 2007) (Spiegel, S.J.) (unpublished) (citing numerous Ohio appellate court decisions); *see also Chatman v. Wolfe,* No. 1:06cv280, 2007 WL 2852341, at *6 (S.D. Ohio Oct. 1, 2007) (Barrett, J.; Black, M.J.) (unpublished); *cf. Rockwell, supra,* 2007 WL 892985, at *7.

A number of federal circuit courts have applied a similar rationale to defendants seeking to challenge their federal sentences in light of the Supreme Court's *Booker* decision, wherein the Court held that the Sixth Amendment as

---

[9] *See also State v. Spurling,* No. C-060087, 2007 WL 624993, at *3 (Ohio Ct. App. 1 Dist. Mar. 2, 2007) (unpublished) (citing *State v. Simmons,* No. C-050817, 2006 WL 3111415, at *2-3 (Ohio Ct. App. 1 Dist. Nov. 3, 2006) (per curiam) (unpublished), *appeal dismissed,* 862 N.E.2d 844 (Ohio 2007)), *appeal dismissed,* 870 N.E.2d 733 (Ohio 2007); *State v. Nguyen,* No. L-05-1369, 2007 WL 1229306, at *5 (Ohio Ct. App. 6 Dist. Apr. 27, 2007) (unpublished); *State v. Billups,* No. 06AP-853, 2007 WL 853335, at *2 (Ohio Ct. App. 10 Dist. Mar. 22, 2007) (unpublished), *appeal dismissed,* 872 N.E.2d 952 (Ohio 2007); *State v. Carrico,* No. 2005CA00324, 2007 WL 427909, at *3 (Ohio Ct. App. 5 Dist. Feb. 5, 2007) (unpublished); *State v. Giesey,* No. 5-06-31, 2006 WL 3771982, at *2 (Ohio Ct. App. 3 Dist. Dec. 26, 2006) (unpublished); *State v. Bower,* No. 06CA3058, 2006 WL 3530134, at *3 (Ohio Ct. App. 4 Dist. Nov. 30, 2006) (unpublished); *State v. Kimble*, No. 2005-T-0085, 2006 WL 3350483, at *5 (Ohio Ct. App. 11 Dist. Nov. 17, 2006) (unpublished); *State v. Jackson,* No. 86506, 2006 WL 1705133, at *9 (Ohio Ct. App. 8 Dist. June 22, 2006) (unpublished), *appeal dismissed,* 855 N.E.2d 1260 (Ohio 2006); *State v. Woods,* No. 05CA0063, 2006 WL 1284613, at *2 (Ohio Ct. App. 2 Dist. May 5, 2006) (unpublished).

construed in *Blakely* applied to the federal Sentencing Guidelines and thus any fact (other than a prior conviction) which increases a sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See, e.g., United States v. Pacheco-Navarette,* 432 F.3d 967, 971 (9th Cir. 2005) (concluding that remand for re-sentencing was "not required to comport with *Booker*" in case "where a defendant was sentenced after pleading guilty to a plea agreement that included a specific sentence stipulation that did not exceed the statutory maximum and was not contingent upon the Guidelines"), *cert. denied,* 127 S.Ct. 197 (2006).[10]

The undersigned acknowledges that in a habeas case filed in the Eastern Division of this Court–*Friley v. Wolfe,* No. 2:05cv396, 2006 WL 3420209 (S.D. Ohio Nov. 27, 2006) (Marbley, J.) (unpublished), the Court vacated a five-year sentence found to have been imposed in violation of *Blakely* despite the fact that the parties had jointly recommended the five-year prison term in their plea agreement. The Court determined that although the parties had agreed to the sentence imposed, the trial court was not required to accept their joint recommendation, nor did the joint recommendation "constitute a stipulation by petitioner to any factual findings that were required to be made by the trial court before it could impose a sentence greater than the statutory maximum." *Friley, supra,* 2006 WL 3420209, at *11. The Court reasoned further that "[w]hile it does appear that petitioner waived the right to appeal his sentence under O.R.C.

---

[10] *See also United States v. Silva,* 413 F.3d 1283, 1284 (10th Cir. 2005) (and cases cited therein) (holding that the defendant, who had plea bargained for a certain sentence and thus had "voluntarily exposed himself to a specific punishment," could not "now claim he was the victim of a mandatory sentencing scheme" in violation of *Booker*); *United States v. Cieslowski,* 410 F.3d 353, 363-64 (7th Cir. 2005) (holding that *Booker,* which "is concerned with sentences arising under the Guidelines," is inapplicable to a "sentence imposed under a Rule 11(c)(1)(C) plea[, which] arises directly from the agreement itself, not from the Guidelines"), *cert. denied,* 546 U.S. 1097 (2006); *United States v. Sahlin,* 399 F.3d 27, 32-33 (1st Cir. 2005) (rejecting claim that a sentence enhancement should be vacated under *Booker,* because the parties had "jointly stipulated to the enhancement and the sentencing increase resulting from the enhancement," and the court did not "engage in fact finding in order to apply the enhancement," but rather "merely applied the terms of the plea agreement, to which it was bound"). In *Sahlin,* the First Circuit also rejected the defendant's claim that his guilty plea was "wrongly accepted, because it was based on his understanding of sentencing procedures, which was rendered erroneous by *Booker*;" the court reasoned that the defendant "was in fact sentenced under the mandatory scheme that he expected. And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea." *Id.* at 31 (quoting *Brady v. United States,* 397 U.S. 742, 757 (1970)) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

§ 2953.08(D) since the trial court imposed the jointly recommended sentence, nothing in the record before this Court reflects that petitioner was advised that he was waiving the right to appeal his sentence by agreeing to a jointly recommended sentence." *Id.*

The undersigned is not persuaded by the reasoning in *Friley* that *Blakely* is applicable to a sentence authorized by law and imposed in accordance with the parties' joint recommendation contained in their plea agreement, because as discussed above, no further fact-finding was required for the imposition of such sentence under Ohio law. *See* Ohio Rev. Code § 2953.08(D); *see also Porterfield,* 829 N.E.2d at 694.[11]

Moreover, *Friley* relied primarily on a Sixth Circuit case, *United States v. Amiker,* 414 F.3d 606 (6th Cir. 2005), which is inapposite. In *Amiker,* the defendant pleaded guilty to an offense which, under the federal Sentencing Guidelines, provided a sentence range of 121 to 151 months' imprisonment. At sentencing, the trial court imposed sentencing enhancements, which placed the defendant in the Guidelines' sentence range of 168 to 210 months' imprisonment. The court sentenced the defendant to a 168-month prison term, "greater than the maximum of 151 months allowed by the facts to which [the defendant] admitted" and unsupported by facts found by a jury. The Sixth Circuit held that the sentence

---

[11] The Supreme Court of Ohio has held that under Ohio Rev. Code § 2953.08(D), "[o]nce a defendant stipulates that a particular sentence is justified, the sentencing judge need not independently justify the sentence." *Porterfield,* 829 N.E.2d at 694. In that case, the state supreme court reversed an appellate court's determination that the trial court had committed reversible error in failing to articulate both "findings" for imposing consecutive sentences and "reasons" for those findings as required in *State v. Comer,* 793 N.E.2d 473 (Ohio 2003). In so ruling, the court explained:

> Porterfield's sentence was entered pursuant to a plea bargain in which Porterfield agreed to the precise sentence that was imposed. . . . Porterfield's sentence was authorized by law, was recommended jointly by him and the prosecution, and was imposed by a sentencing judge. Pursuant to R.C. 2953.08(D), Porterfield's sentence is not subject to review. *Comer* cannot be applied here. The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate. *Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence.* Pursuant to R.C. 2953.08(D), the trial court's compliance with R.C. 2929.19 and *Comer* was not required.

*Porterfield*, 829 N.E.2d at 694 (emphasis added).

14

was imposed in violation of *Booker*, reasoning as follows:

> The Supreme Court has said that where a defendant pleads guilty, the government "'is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to the judicial factfinding.'" . . . The plain meaning of this language, and the equally plain language of *Booker* and *Blakely*, indicate that consent to judicial factfinding cannot be found in an ordinary plea agreement. At the time of Amiker's plea agreement and sentencing, *all plea agreements required, either explicitly or implicitly, that a defendant agree to sentencing under the Guidelines.* Where this requirement is spelled out, we see no reason to imply consent to judicial factfinding. That Amiker, in his plea agreement, agreed to be sentenced pursuant to the Sentencing Guidelines, does not preclude him from raising the *Booker* error on appeal.

*Amiker,* 414 F.3d at 607-08 (emphasis added) (citations to *Booker* and *Blakely* omitted).

In contrast to the plea agreement in *Amiker,* the parties' bargained-for agreement to a specified sentence authorized by law relieves the court of any judicial fact-finding, and therefore does not implicate any concerns under *Blakely* or *Booker.* By relying on *Amiker*, the *Friley* court failed to take into account the many federal and state cases discussed above, which hold that *Blakely* and *Booker* do not apply to such sentences. The undersigned, therefore, declines to follow *Friley,* but rather is persuaded by the overwhelming number of cases holding otherwise.[12]

Accordingly, in sum, because the trial court imposed the precise sentence that the parties had agreed to as part of their plea bargain and petitioner is unable to prevail on any claim that the sentence was imposed in violation of the Sixth Amendment in light of *Blakely* and its progeny, the undersigned concludes that trial counsel's conduct did not fall outside the wide range of reasonable professional assistance to the extent counsel may have informed petitioner that he

---

[12] Other District Judges of this Court have similarly declined to follow *Friley* in denying federal habeas relief to state prisoners who raised claims challenging their agreed-to sentences based on *Blakely*. *See, e.g., Warren v. Warden, Noble Corr. Instit.,* No. 1:06cv534, 2008 WL 1732976, at *5 (S.D. Ohio Apr. 10, 2008) (Barrett, J.) (unpublished); *Suttles v. Warden, Noble Corr. Instit.,* 1:06cv55, 2007 WL 2110498, at *10-11 (S.D. Ohio July 17, 2007) (Spiegel, S.J.; Hogan, M.J.) (unpublished).

was precluded by Ohio Rev. Code § 2953.08(D) from appealing the sentence. *Cf. Porter v. Hudson,* No. 3:06cv1608, 2007 WL 2080444, at *8 & n.6 (N.D. Ohio July 16, 2007) (O'Malley, J.) (unpublished) (noting that, contrary to petitioner's contention, counsel's advice to petitioner "concerning his inability to appeal a jointly recommended sentence" was "supported by law"). The limitations provision set forth in 28 U.S.C. § 2244(d)(1)(B), therefore, is not applicable to the case-at-hand.

An additional argument can be made in petitioner's favor that the claims alleged in Grounds Two and Three challenging petitioner's sentence and trial counsel's failure to object to the sentence arose much later, after *Blakely* and *Booker* were decided, and therefore either § 2244(d)(1)(C) or (D) applies to delay the commencement of the limitations period with respect to those claims.

However, § 2244(d)(1)(D) does not govern these grounds for relief. Petitioner does not contend that he was unaware at the time of sentencing that the trial court was imposing non-presumptive consecutive sentences per the parties' plea agreement. Therefore, the factual predicate underlying these claims was discoverable in the exercise of due diligence at the time petitioner was sentenced.

Moreover, for the limitations provision set forth in § 2244(d)(1)(C) to apply, it must be established that the legal basis for petitioner's claim was "newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review." In this case, petitioner essentially alleges that the non-minimum consecutive sentences imposed by the trial court in March 2003 are unconstitutional under *Blakely* and *Booker,* particularly in light of the Supreme Court of Ohio's decision in *Foster*.

As discussed above, petitioner's convictions and sentences became "final" in 2003, long before the Supreme Court decided *Blakely* on June 24, 2004, followed by *Booker* on January 12, 2005; neither *Blakely* nor *Booker* may be applied retroactively to cases on collateral review, where as here the conviction previously had become final by the conclusion of direct review or expiration of time for seeking such review. *See, e.g., Saikaly,* 424 F.3d at 517 & n.1;

*Humphress,* 398 F.3d at 860-63; *Spiridigliozzi,* 117 Fed.Appx. at 394.[13]

Petitioner further cannot rely upon *Foster* to delay the limitations period under § 2244(d)(1)(C), because *Foster* was not decided by the United States Supreme Court.  In any event, in *Foster,* the Ohio Supreme Court expressly stated that the decision extended only to cases still pending on direct review.  *Foster,* 845 N.E.2d at 499.  Because the appeal period expired in this case nearly three years before *Foster* was decided, petitioner is unable to prevail on any claim that *Foster* may be applied retroactively to his case.

Finally, to the extent petitioner contends that he was not informed of his appeal rights when he entered his guilty plea and was sentenced, an argument can be made that § 2244(d)(1)(D) governs petitioner's claim alleged in Ground One that he was denied his right of appeal, as well as the ineffective assistance of counsel claim alleged in Ground Three based on trial counsel's failure to file a notice of appeal.[14]  However, as discussed above, contrary to petitioner's contention, it is clear from the record that petitioner was placed on notice and

---

[13]  Petitioner also cannot rely on the Supreme Court's earlier decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), which was the seminal case extended by the Supreme Court in *Blakely* and *Booker,* holding that the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that the defendant is guilty beyond a reasonable doubt of any fact, other than the fact of a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum.  *Apprendi,* which was decided in March 2000, did not announce a "newly recognized" constitutional right by the time petitioner was sentenced three years later in March 2003.

[14]  To the extent petitioner alleges in Ground One that the Ohio Court of Appeals erred in denying his motion for delayed appeal, his claim is not time-barred.  *See DiCenzi v. Rose,* 452 F.3d 465, 468-69 (6th Cir. 2006).  However, this Court may review such a claim only to the extent petitioner alleges a violation of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).  Petitioner's claim fails to implicate federal constitutional concerns except to the extent that petitioner seeks relief based on the underlying claims that he was denied his right of appeal because he was not informed of his appellate rights and because his counsel did not file a timely notice of appeal. *Cf. Wolfe v. Randle,* 267 F.Supp.2d 743, 747 (S.D. Ohio 2003) (Spiegel, S.J.) (while acknowledging that a "defendant is not necessarily denied a constitutional right when a state court denies a request for a delayed appeal," the district court concluded that "due process rights are implicated when a delayed appeal is the result of a lower court's failure to ensure that an indigent defendant's appellate rights are protected"); *see also Granger v. Hurt,* 215 Fed.Appx. 485, 494-95 (6th Cir. Feb. 8, 2007) (not published in Federal Reporter); *Lawhun v. Jeffries,* No. 1:05cv2491, 2006 WL 1982869 (N.D. Ohio July 13, 2006) (unpublished).  As discussed below, petitioner's underlying claims of constitutional error are time-barred.

17

understood at the time he entered his plea that he had a right to a limited appeal, which he was required to file within thirty days of sentencing.  (Doc. 11, Ex. 2; Ex. 4, Tr. 8).

Therefore, § 2244(d)(1)(D) applies only to the extent petitioner could not have discovered within the requisite thirty-day appeal period the factual predicate of the ineffective assistance of counsel claim alleged in Ground Three of the petition, which stemmed from trial counsel's purported failure to file a notice of appeal as requested by petitioner.

"[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D)."  *DiCenzi v. Rose,* 452 F.3d 465, 471 (6th Cir. 2006) (citing *Lott v. Coyle,* 261 F.3d 594, 605-06 (6th Cir. 2001), *cert. denied,* 534 U.S. 1147 (2002)).

In *DiCenzi,* the Sixth Circuit remanded the case to the district court "to allow it to determine when a defendant in [the petitioner's] position, acting with due diligence for AEDPA statutory purposes, would have discovered his right to an appeal."  *Id.* at 472.  In that case, there was no evidence in the record that the petitioner was informed of his right to an appeal at the time he was convicted and sentenced; moreover, the petitioner pointed out that when he was first informed of his appellate rights over two years thereafter, he immediately filed a motion for leave to file a delayed appeal and filed "repeated pleadings noting that he was never informed of his right to an appeal" from that point on.  *See id.* at 467, 471.

In light of petitioner's arguments, the Sixth Circuit refused to find, as argued by the State, that the petition was time-barred given the "long periods of time during which [the petitioner] apparently took no action" in the state courts, "and the fact that his habeas petition was not filed until just over four years after his sentence became final."  *Id.* at 471-72.  The court reasoned:

> The district court never reached the issue of diligence for the purposes of 28 U.S.C. § 2244(d)(1)(D), and thus did not weigh this evidence with regard to the statutory timeliness of [the] petition.  As an appellate court, absent factual findings below, we cannot ourselves determine what [petitioner] knew or what a reasonable person in [petitioner's] position might reasonably be expected to do.  "We can, however, say that the [several month period during which DiCenzi did not have some sort of motion pending that would have tolled the statute of limitations] is not so clearly unreasonable [for a prisoner in

the position DiCenzi claims he was in] that it plainly appears from the face of appellant's petition and supporting papers that he is barred from habeas relief. . . ."

*Id.* (quoting *Wims v. United States,* 225 F.3d 186, 190-91 (2nd Cir. 2000)).

Here, in contrast to *DiCenzi*, there is no evidence in the record even remotely suggesting that petitioner acted with reasonable diligence to discover the factual predicate of his ineffective assistance of counsel claim.  Here, petitioner knew he had a limited right of appeal, which had to be exercised within thirty days of sentencing.   Although "[d]ue diligence plainly did not require [petitioner] to check up on his counsel's pursuit of an appeal . . . the very day on which [the] petitioner's conviction became final absent appeal," *Wims,* 225 F.3d at 190, there is no evidence in the record that petitioner ever attempted to contact his trial counsel or the state courts to check on the status of his appeal in the over two-year period that ensued after the thirty-day period for filing an appeal as of right from the trial court's March 27, 2003 final judgment entry expired.

Indeed, petitioner was silent and did nothing to challenge his conviction or sentence until June 2005, when he filed motions for post-conviction relief and to correct sentence with the trial court.  In those motions, petitioner failed to mention or otherwise ask about the status of the appeal purportedly filed and pursued on his behalf by counsel.  Only in October 2005, after the trial court denied his motions for post-conviction relief and to correct sentence and nearly two and one-half years after the time for filing an appeal expired, did petitioner finally file a motion for delayed appeal from the trial court's final judgment entry, wherein he claimed for the first time that his trial counsel acted improperly in failing to file a notice of appeal.

Petitioner's two and one-half year silence with respect to a right that he knew had to be exercised within thirty days of sentencing was unreasonable.  The undersigned, therefore, finds that petitioner has not met his burden of demonstrating that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his ineffective assistance of counsel claim, pursuant to 28 U.S.C.

§ 2244(d)(1)(D).[15]

For the foregoing reasons, the undersigned adopts the position espoused by respondent that all of petitioner's constitutional claims for relief are governed by the limitations provision set forth in 28 U.S.C. § 2244(d)(1)(A), which provides that the one-year statute of limitations begins to run from the date on which the challenged judgment became "final" by the conclusion of direct review or the expiration of time for seeking such review.

As respondent has argued, the statute commenced running under § 2244(d)(1)(A) on April 29, 2003, one day after the 30-day period expired in which to file an appeal as of right to the Ohio Court of Appeals from the trial court's March 27, 2003 judgment entry.  *See* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000).  The statute expired one year later on April 24, 2004 unless statutory or equitable tolling principles apply to extend the limitations period.

During this one-year period, petitioner was entitled to the benefits of the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. § 2244(d)(2); *see also Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Gendron v. United States,* 154 F.3d 672, 675 & n.3 (7th Cir. 1998) (per curiam), *cert. denied,* 526 U.S. 1113 (1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn,* 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997) (unpublished), *cert. denied,* 522 U.S. 1149 (1998).

---

[15] *Cf. Hawk, supra*, 2007 WL 2840319, at *1, 4 (refusing to extend *DiCenzi* in case where the petitioner was similarly informed in the written plea agreement that he had a limited right of appeal which he was required to file within thirty days of sentencing, and petitioner claimed that he told his attorney to file an appeal, but that his attorney advised him it wasn't worth it and that he had no grounds for an appeal); *Porter, supra,* 2007 WL 2080444, at *8-9 (holding that § 2244(d)(1)(D) was inapplicable because petitioner had not met his burden of demonstrating due diligence in an analogous case where it was "clear from the record that [he] was made aware when he entered into a plea agreement with the State that he had a right to an appeal, which he was required to file within a specified time frame," but took no action "whatsoever to challenge his conviction until [over] three years . . . after the entry of the trial court's judgment").

The tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998); *see also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000); *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Rashid,* 991 F. Supp. at 259; *cf. Cox v. Angelone*, 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

Here, petitioner did nothing to challenge his conviction or sentence in the state courts until he filed his motions to correct sentence and for post-conviction relief in June 2005, over a year after the statute of limitations expired in April 2004. These motions, as well as petitioner's later-filed motion for delayed appeal, therefore, did not serve to toll the limitations period under § 2244(d)(2).[16]

The statute of limitations may be equitably tolled in limited circumstances. *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988). In *Pace v. DiGuglielmo,* 544 U.S. 408 (2005), the Supreme Court stated that a petitioner seeking equitable tolling generally bears the burden of establishing that (1) he has been pursuing his rights diligently; and (2) "some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)).

Before *Pace,* the Sixth Circuit required the court to consider the following factors in determining whether the statute of limitations governing federal habeas petitions should be equitably tolled:

---

[16] Petitioner is unable to prevail on any claim that his motion for delayed appeal caused the limitations period to begin anew. In *Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir.), *cert. denied,* 534 U.S. 905 (2001), the Sixth Circuit held that delayed appeal motions do not retrigger the statute's running, but rather can only serve to toll the limitations period. More recently, in *DiCenzi,* 452 F.3d at 469*,* the Sixth Circuit further emphasized that a motion for delayed appeal, *"even if granted*, does not restart the statute of limitations, but if properly filed, it does toll the statute during the time the motion was pending." (Emphasis added).

(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008 (citing *Andrews,* 851 F.2d at 151). The absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling. *Dunlap,* 250 F.3d at 1009; *Andrews,* 851 F.2d at 151(citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)). The absence of prejudice may only be considered when other factors of the test are met. *Id.*

In this case, petitioner is not entitled to equitable tolling. He has not demonstrated that some extraordinary circumstance prevented him from filing a timely federal habeas petition with this Court or that he is otherwise entitled to equitable tolling under *Dunlap*.

Accordingly, in sum, the Court concludes that the instant petition, filed in December 2006, is time-barred. Under § 2244(d)(1)(A), the statute of limitations commenced running on April 29, 2003 and expired on April 29, 2004; neither the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) nor equitable tolling principles apply to extend the limitations period in this case.

Rrespondent's motion to dismiss the petition with prejudice on the ground that it is barred from review by the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d) (Doc. 11) should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 11) be **GRANTED**, and petitioner's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should issue only with respect to any Order adopting the Report and Recommendation to deny with prejudice on procedural statute of limitations grounds petitioner's claims alleged in Grounds One and Three of the petition that he was denied his constitutional right of appeal and that his trial

counsel was ineffective in failing to file a notice of appeal as requested by petitioner; under the applicable two-part standard established in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would find it debatable whether this Court is correct in its procedural ruling and whether petitioner has stated viable constitutional claims in those grounds for relief.  With respect to petitioner's remaining claims alleged in Grounds Two and Three of the petition, which are based on *Blakely* and *Booker,* a certificate of appealability should not issue, because jurists of reason would not find it debatable whether petitioner has stated viable constitutional claims given that the *Blakely/Booker* line of cases cannot be retroactively applied to the instant case.[17]  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

    3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore **GRANT** petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  8/28/08                                    s/Timothy S. Black

      cbc                                          Timothy S. Black
                                                      United States Magistrate Judge

J:\BRYANCC\2008 habeas orders\06-841mtd-grant.sol-gp-rtappl-blakely.wpd

---

[17] *Cf. Savage v. Moore,* No. 1:06cv2963, 2008 WL 341349 (N.D. Ohio Feb. 5, 2008) (unpublished) (reaching same conclusion in analogous case); *Ratliff v. Jefferys,* No. 3:06cv1931, 2007 WL 4248173 (N.D. Ohio Nov. 30, 2007) (unpublished) (same); *Winters v. Warden, Noble Corr. Instit.,* No. 1:06cv428, 2007 WL 2733995 (S.D. Ohio Sept. 13, 2007) (Dlott, J.) (unpublished) (same); *Wilson v. Wolfe,* No. 1:06cv542, 2007 WL 2446582 (S.D. Ohio Aug. 23, 2007) (Beckwith, J.) (unpublished) (same).

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Clinton D. Vilardo,
     Petitioner

vs                         Case No. 1:06cv841
                            (Beckwith, C.J.; Black, M.J.)

Warden, Lebanon Correctional
Institution,
     Respondent

# NOTICE

     Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Any party may object to the Magistrate Judge's Report and Recommendation within **fifteen (15) days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).